UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL ONEIL RUFFIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:17-cv-00151-NT |
| | ) | |
| JOHN HINKLEY, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER SCREENING COMPLAINT
PURSUANT TO 28 U.S.C. §§ 1915(e), 1915A**

In this action, Plaintiff Daniel Ruffin, an inmate incarcerated at the Knox County Jail, alleges Defendants discriminated against him based on his religion, race, and grievance activity.

Plaintiff filed an application to proceed in forma pauperis (ECF No. 3), which application the Court granted. (ECF No. 5.) In accordance with the in forma pauperis statute, a preliminary review of Plaintiff's complaint is appropriate. 28 U.S.C. § 1915(e)(2). Additionally, Plaintiff's complaint is subject to screening "before docketing, if feasible or … as soon as practicable after docketing," because he is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

Following a review of Plaintiff's complaint, I recommend the Court dismiss all but two of Plaintiff's claims.

1

## STANDARD OF REVIEW

The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action. When a party is proceeding in forma pauperis, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In addition to the review contemplated by § 1915, Plaintiff's complaint is subject to screening under the Prison Litigation Reform Act because Plaintiff currently is incarcerated and seeks redress from governmental entities and officers. *See* 28 U.S.C. § 1915A(a), (c). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim", *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## FACTUAL BACKGROUND[1]

Plaintiff alleges he is an African American and a Muslim. Plaintiff's narrative complaint contains four claims:[2]

1. Violation of his right to receive meals that do not contain pork because it is proscribed by his religious belief;

2. Violation of his right to religious items, which violation includes discriminatory treatment based on his race and religion;

3. Discrimination based on race, religion, and grievance activity in connection with the refusal to transfer Plaintiff to a minimum custody pod, despite his minimum custody security clearance; and

4. Violation of due process in the course of grievance review activity.

---

[1] The facts set forth herein are derived from Plaintiff's complaint.

[2] Plaintiff does not set forth his claims in separate counts or paragraphs.

A.  **Relevant Legal Standards**

   *1.  RLUIPA*[3]

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA or Act), provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a). RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

"[A] RLUIPA plaintiff bears the burden of demonstrating that he or she wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *LeBaron v. Spencer*, 527 F. App'x 25, 28 (1st Cir. 2013) (quotation marks omitted). In this context, a substantial burden "is one that puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 29 (quoting *Spratt v. Rhode Island Dep't of Corr.*, 482 F.3d 33, 38 (1st Cir. 2007)).

---

[3] Although Plaintiff makes no mention of RLUIPA in his pleadings, the Court may consider sua sponte whether his factual allegations raise such a claim. See 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).

RLUIPA provides Plaintiff with a claim "against a government," but does not authorize an "individual capacity" claim against the individual defendants. 42 U.S.C. § 2000cc–1(a). Although the statutory definition of "government" includes "any ... person acting under color of State law," the Act does not authorize individual capacity liability as under section 1983. *Stewart v. Beach*, 701 F.3d 1322, 1334 – 35 (10th Cir. 2012) (citing additional circuit court authority and explaining that RLUIPA was enacted pursuant to Spending Clause authority, and therefore does not run against individual government employees except in their official capacities). Furthermore, even against an institutional defendant, RLUIPA does not authorize a claim for money damages. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *Reese v. Bouffard*, No. 1:14-CV-00244-GZS, 2015 WL 1947192, at *7, 2015 U.S. Dist. LEXIS 10093, at *16 (D. Me. Jan. 28, 2015) (recommended decision), aff'd (Apr. 29, 2015).

## 2. *The First Amendment*

A claim for deprivation of first amendment rights is actionable under 42 U.S.C. § 1983, "against those who, acting under color of state law, violated federal law." *Kuperman v. Wrenn*, 645 F.3d 69, 74 (1st Cir. 2011). A claim based on a prison regulation that restricts the free exercise of religion requires a showing that the regulation is not reasonably related to a legitimate penological interest. *Id.* "The factors relevant in deciding the regulation's constitutionality are: (1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right

5

will have on prison resources; and (4) the absence of alternatives to the prison regulation." *Id.*

In addition to the Free Exercise Clause, the First Amendment provides a right to access the courts in redress of grievances. *Hannon v. Beard*, 645 F.3d 45, 47–48 (1st Cir.2011). Prison officials can violate the First Amendment if they retaliate against an inmate based on the inmate's participation in protected activity. *Id.* A retaliation claim requires (1) that the inmate engaged in conduct that is protected by the First Amendment; (2) that a defendant took adverse action against the inmate because of the prisoner's protected conduct; and (3) that the adverse action would deter an inmate of ordinary firmness from exercising his or her First Amendment rights. *Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 94 (D. Me. 2013). "Because prisoner retaliation claims are 'easily fabricated [ ] and ... pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." *Hannon*, 645 F.3d at 48 (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)).

### 3. *Equal protection*

The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination by state officers. To state a claim of discrimination, a plaintiff must assert (1) facts that could support a plausible inference that he or she experienced differential treatment when compared to another prisoner "similarly situated in all relevant respects," *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir. 2014) (internal quotation marks omitted), and (2) facts that suggest

that the difference in treatment "was based on an impermissible consideration, such as race," *Ayala–Sepulveda v. Mun. of San German*, 671 F.3d 24, 32 (1st Cir. 2012).

### 4. *Limitation on recovery*

With respect to claims brought by prisoners against their custodians, the Prison Litigation Reform Act contains the following limitation on recovery: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act …." 42 U.S.C.A. § 1997e(e). Although the First Circuit has not resolved the issue in this circuit, this Court, several circuit courts of appeals, and at least one other district court in this circuit have held that the limitation applies to claims for compensatory damages based on the violation of a constitutional right. *Robinson v. Landry*, No. 2:15-CV-58-DBH, 2015 WL 4077297, at *2, 2015 U.S. Dist. LEXIS 87025, at *6 – 7 (D. Me. July 6, 2015); *Mattei v. Dunbar*, 217 F. Supp. 3d 367, ___, 2016 U.S. Dist. LEXIS 154891, at *26 (D. Mass. 2016) (collecting circuit court opinions). The limitation, however, does not prevent constitutional claims from proceeding where the claimant has alleged an actionable claim for nominal damages, punitive damages, and/or injunctive relief. *Kuperman v. Wrenn*, 645 F.3d 69, 73 n.5 (1st Cir. 2011).

**B.     Analysis**

   *1.     Religious diet*

According to Plaintiff, upon intake at the jail on November 17, 2016, he informed Defendant Warren Heat, a sergeant at the jail, that he is a Muslim and a diabetic.[4] Plaintiff alleges he was served pork on three occasions, soon after he arrived at the jail and after he requested that he not be served pork because he is a Muslim.

A prisoner has a right under both RLUIPA and the Free Exercise Clause of the Constitution to receive a diet that conforms to dietary restrictions imposed by a sincerely held religious belief system, subject only to limited exceptions. *LeBaron v. Spencer*, 527 F. App'x 25, 31 (1st Cir. 2013) (per curiam). At this stage of the proceedings, Plaintiff has alleged sufficient facts to support the necessary inference that his adherence to the Muslim faith is sincere and that his beliefs require that he observe certain dietary restrictions; specifically, that he not consume pork. *See Barnett v. Comm'r*, 187 F.3d 621 (1st Cir. 1999) (per curiam table opinion). Plaintiff, however, has not identified a policy that would deny him a diet that meets his needs. The incidents of which Plaintiff complains occurred shortly after he arrived at the jail, were limited in number, and have not re-occurred. In the absence of any type of policy that would deny Plaintiff of a diet in accordance with his religious beliefs and with no other basis for injunctive relief, Plaintiff has not asserted a claim based on the diet at the jail.

---

[4] Although Plaintiff describes himself as diabetic, his diabetes does not relate to any of the claims asserted in the complaint. Plaintiff has, however, filed a separate action in which he asserted claims related to his diabetes. *Ruffin v. Cichon*, No. 2:17-CV-00152-NT.

## 2. *Religious items*

Plaintiff alleges that Defendants Timothy McFarland, Assistant of Programs at the jail, Cynthia Gardner, Lieutenant of Programs at the jail, and John Hinkley, Jail Administrator, denied his requests for certain religious items. In particular, Plaintiff asserts that he has not been provided with a Quran, and that he must purchase one from the commissary, whereas Christian inmates have ready access to bibles because bibles are available throughout the jail for general use. (Complaint at 6; Complaint Ex. 8, PageID # 19.) In his related grievance paperwork, Plaintiff identified several items necessary for the practice of his religion, including the Quran, prayer rugs, prayer beads, medallions, prayer oils, and religious books. (Complaint Ex. 11, PageID # 24.) Plaintiff evidently has obtained some items, including prayer oil, a kufi, and some religious books, but seeks a religious medallion of acceptable size. (Complaint Ex. 15, PageID # 33.) Plaintiff also asserts that Christian inmates receive services and certain "medallions." (Complaint at 6.)

Plaintiff alleges denial of his right to free exercise, and discrimination based on race and religion. Plaintiff has not alleged any facts that would support a finding that any of the defendants deprived Plaintiff of his right to free exercise or a finding that any defendant is liable under RLUIPA. Plaintiff's right to free exercise restricts the government's ability to impose burdens on his religious practice, but does not require the government to provide any specific religious items. *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005) ("[RLUIPA is] [d]irected at obstructions institutional arrangements place on religious observances. ... [It] does not require a State to pay for an inmate's devotional accessories."); *Charles v. Verhagen*, 348 F.3d 601, 605 (7th Cir. 2003) (concluding that RLUIPA required prison

9

officials to allow prisoner to possess Islamic prayer oil, but prisoner had responsibility for purchasing oil). In short, neither the constitution nor RLUIPA requires defendants to supply the requested religious items at government expense.

Plaintiff's discrimination claim appears to be based on his assertion that certain defendants "furnish the white inmates with all the religious material, service, and religious medallions." (Complaint at 6.) Plaintiff has not alleged the source of the materials. That is, Plaintiff has not alleged that defendants purchased the materials with government funds or whether the materials were donated to the jail.[5] In this way, Plaintiff's complaint is somewhat ambiguous. Given the deferential review at this stage of the proceedings, because Plaintiff's complaint could be construed to allege that Defendants purchased the items with state funds to provide for the availability of Christian religious programming, Plaintiff has asserted an actionable § 1983 claim based on either the First Amendment or the Equal Protection Clause, or both.[6]

### 3. *Discrimination in prison housing*

Plaintiff alleges that Defendants McFarland and Gardner discriminated against him based on his race and religion, and retaliated against him based on grievance activity by repeatedly denying his requests to be moved into minimum security housing despite Plaintiff's minimum security classification. "[C]ompliance with the Fourteenth

---

[5] In a grievance form, Plaintiff wrote that white inmates are given their religious medallions when they are dropped off at the jail. (Grievance Paperwork, Complaint Ex. 14, PageID # 32.) This language might suggest that jail officials did not purchase the items.

[6] Differential treatment would also violate RLUIPA. *Cutter*, 544 U.S. at 720 ("Properly applying RLUIPA, courts … must be satisfied that the Act's prescriptions are and will be administered neutrally among different faiths.").

Amendment's ban on racial discrimination is not only consistent with proper prison administration, but also bolsters the legitimacy of the entire criminal justice system." *Johnson v. California*, 543 U.S. 499, 510 – 11 (2005).

Plaintiff asserts that Defendants frequently move white inmates from Plaintiff's housing area into the "minimum pods" even though they do not have a preferential status. (Complaint at 6 – 7; Complaint Ex. 10, PageID # 22.) Although Plaintiff does not describe his housing assignment, one can reasonably infer from his complaint that he is not in a minimum security pod. Plaintiff, therefore, has asserted sufficient facts to proceed on a prison housing discrimination claim.

### 4. *Due process*

According to Plaintiff, Defendant Heat wrote up Plaintiff for a rule infraction based on his refusal to lock down after an order to do so by Defendant Heat or Defendant David Palmer. (Complaint Ex. 12(A), PageID # 26.) Plaintiff demanded a grievance form, which Defendant Heat provided. (Complaint Ex. 12(B), PageID # 27 – 29.) Plaintiff contends that Defendants Heat and Hinkley violated his due process rights because Defendant Heat investigated and answered Plaintiff's grievance, and Defendant Hinkley never responded to Plaintiff's grievance appeal. (Complaint at 8; Complaint Ex. 13, PageID # 30 – 31.)

To state a due process claim, Plaintiff must allege facts that would support a determination that the procedural violation about which he complains resulted in an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Plaintiff simply does not describe an atypical and significant hardship.

Furthermore, the Due Process Clause does not compel states to follow any particular grievance procedure. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]here is no constitutional right to participate in grievance proceedings."); *Charriez v. Sec'y, Fla. Dep't of Corr.*, 596 F. App'x 890, 895 (11th Cir. 2015) ("Because the prison grievance procedure does not create a protected liberty interest, Charriez does not have a federal constitutional right within that administrative-grievance procedure."); *Von Hallcy v. Clements*, 519 F. App'x 521, 523 (10th Cir. 2013) ("Von Hallcy cannot state a due process claim based on allegations of an ineffective grievance reporting system."); *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) ("[A] prisoner has no free-standing constitutional right to an effective grievance process …."); *Butler v. Brown*, 58 F. App'x. 712 (9th Cir. 2003) ("[A] prisoner has no constitutional right to prison grievance procedures."); *Young v. Gundy,* 30 F. App'x. 568, 569 – 70 (6th Cir. 2002) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."). Defendant Heat's review of the grievance even though he initiated the disciplinary proceeding, and Defendant Hinkley's lack of response to the appeal, therefore, are not actionable under the Due Process Clause.

## CONCLUSION

Based on the foregoing analysis, pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(a), I recommend the Court dismiss Plaintiff's diet-related free exercise and RLUIPA claims, and Plaintiff's due process claim, but permit Plaintiff to proceed on his

claims based on the denial of religious items and the denial of minimum security housing.[7]
If the Court adopts the recommendation, Plaintiff would have failed to assert sufficient facts to support a claim against Defendants Warren Heat, Heidi Norweg, David Palmer, and Bruce Sheaff would be dismissed.[8] I, therefore, also recommend the Court dismiss Defendants Heat, Norweg, Palmer and Sheaff.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of May, 2017.

---

[7] The defendants on the actionable claims are Defendants McFarland, Gardner, and Hinkley (denial of religious items claim) and Defendants McFarland and Gardner (denial of minimum security housing).

[8] Defendants Heat and Palmer are referenced in the discussion. Defendant Norweg is described as the Assistant Jail Manager, and Defendant Sheaff is described as the Food Service Manager.

13