UNITED STATES DISTRICT COURT
District of Maine

| | |
|---|---|
| DANIEL RUFFIN,<br>    Plaintiff<br><br>v.<br><br>WARREN HEATH IV, DENNIS PALMER,<br>JOHN HINKLEY, CYNTHIA GARDNER,<br>and TIMOTHY MCFARLAND,<br>    Defendants | Docket No. 2:17-cv-00151-NT |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

NOW COME Defendants, by and through undersigned counsel, and hereby move this honorable Court pursuant to Fed.R.Civ.P. 56 for summary judgment in their favor. Filed in connection with this motion is Defendants' Statement of Uncontested Material Facts pursuant to Local Rule 56(b).

**MEMORANDUM OF LAW**

I. INTRODUCTION

Plaintiff filed a complaint (Document No. 1) and two motions to amend (Documents No. 11 and 13). The Court reviewed the complaint and amendments pursuant to 28 U.S.C. §§ 1915(e) and 1915(A). After that screening, the Court permitted the following claims to proceed: "(1) a claim under the First Amendment and the Equal Protection Clause, based on allegations of disadvantageous treatment of Muslims as compared to Christians with respect to the availability of religious items and programming; and (2) a claim of discrimination in prison housing."

*Recommended Decision After Screening Amended Complaint (Document No. 22, p. 2)[1]*. The Religious Land Use and Institutionalized Person Act (RLUIPA) claim also survives as related to the availability of religious items. *Id*. at 6. The Court held that the allegations contained in Plaintiff's Amended Complaints would simply be "incorporated into these claims." *Id*. at 10. These claims are brought against John Hinkley, Cynthia Gardner, Timothy McFarland, Dennis Palmer, and Warren Heath IV in their official and individual capacities.[2]

## II. FACTS

The undisputed material facts of this case are set forth in Defendants' Statement of Material Facts in Support of Motion for Summary Judgment (hereinafter "DSMF"). The Defendants incorporate the DSMF into this memorandum of law. The Defendants briefly summarize the facts here.

Daniel Ruffin was incarcerated at the Knox County Jail beginning on November 17, 2016. *DSMF ¶ 1*. The Knox County Jail only houses minimum and medium inmates and minimum and medium inmates are housed throughout the entire jail and sometimes mixed in the same pod. *DSMF ¶¶ 9, 11, 12*. There are a limited number of pods that are identified as minimum housing, but they are not used exclusively to house minimum security inmates. *DSMF ¶¶ 10-13*.

Ruffin was classified as a minimum security inmate and he continued in that classification during the entire time he was at the Knox County Jail. *DSMF ¶ 6*. He was housed in booking until November 22, 2016, when he was placed in a cell in the medium section of the jail. *DSMF ¶ 7*. This was before he filed any grievances. *DSMF ¶ 50*. Ruffin had filed two inmate requests

---

[1] The court dismissed Plaintiff's claims concerning access to the court, the adequacy of his diet and due process. *Recommended Decision After Screening Complaint (Document No. 10); Recommended Decision After Screening Amended Complaint (Document No. 22).*

[2] The Plaintiff's claims against these Knox County employees in their official capacities are essentially the same as bringing a claim against Knox County. *See Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 691 n. 55 (1978)(stating that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.")

2

by that time, but they were only for a pin number and a visitation list. *DSMF ¶ 49*. He remained in the medium section of the jail throughout the remainder of his time at the jail. *DSMF ¶ 8*. In January he was denied a request to move to a minimum pod because of his behavior. *DSMF ¶¶ 15-17*. In April he was asked if he wanted to move to a minimum pod, but he declined. *DSMF ¶18*.

When Ruffin was first incarcerated at the jail, the jail did not have any Qur'ans. *DSMF ¶ 22*. The jail did have Bibles, but these were donated as the jail does not purchase religious books or items for inmates. *DSMF ¶¶ 20, 21*. After Ruffin requested a Qur'an the jail contacted the Maine State Prison and Cumberland County Jail to find out how to get a Qur'an. *DSMF ¶ 23*. Officer McFarland was directed to contact the Islamic Society of North America. *DSMF ¶ 23*. The week before Christmas Officer McFarland made a request for Qur'ans to the Islamic Society of North America. *DSMF ¶ 24*. The Qur'ans arrived in January and one was issued to Ruffin on January 11, 2017. *DSMF ¶¶ 25, 26, 27*. Ruffin was also issued a Muslim prayer book, a kufi hat and prayer oil at the same time. *DSMF ¶ 27*. On January 16, 2017, Ruffin filled out an inmate request asking for his St. Christopher medallion. *DSMF ¶ 31*. This was the first time he had made a written request for the medallion. *DSMF ¶ 31*. The medallion was given to Ruffin on January 20, 2017. *DSMF ¶32*.

Ramadan began on May 26, 2017, and the jail made arrangements with the kitchen to serve Ruffin his meals at approximately 2000 and 400 in order to accommodate his religious needs. *DSMF ¶¶ 33-35*. On June 8, 2017, Ruffin was transferred to the Cumberland County Jail. *DSMF ¶ 2*. Major Hinkley made the decision to transfer Ruffin because the Cumberland County Jail has more inmates who identify as Muslim and provides more religious services for Muslim inmates. *DSMF ¶ 3*. Ruffin was transferred to the Maine State Prison on June 20, 2017, where he remains.

*DSMF ¶¶ 4, 5.*

III. LEGAL ARGUMENT

    A. <u>Standard of Review</u>

Summary judgment should be granted when the record evidence demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* The moving party bears the burden of demonstrating the lack of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The record is reviewed in the light most favorable to the non-moving party, and that party must be given the benefit of reasonable inferences drawn from properly asserted facts. *See Nicolo v. Philip Morris, Inc.*, 201 F.3d 29 (1st Cir. 2000). Summary judgment should be entered "against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

    B. <u>The Defendants are entitled to summary judgment on all of Plaintiff's allegations because he has not exhausted his administrative remedies under the Prison Litigation Reform Act</u>.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *42 U.S.C. § 1997e(a).* Exhaustion is not left to the discretion of the district court, but is mandatory. *Booth v. Churner*, 532 U.S. 731, 739-741 (2001). A prisoner must also exhaust administrative remedies "even where the relief sought – monetary damages – cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "[E]xhaustion of available administrative remedies is

required for any suit challenging prison conditions, not just for suits under § 1983." *Id.* Section 1997e(a) requires "proper exhaustion," which means that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Id.* at 89-93. A prisoner must exhaust all levels of the prison grievance process. *See Johnson v. Thyng*, 369 Fed. Appx 144, 147-48 (1st Cir. 2010). The exhaustion requirement applies even if the prisoner is transferred to a new facility. *See Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002).

        1.    Ruffin did not exhaust his administrative remedies as required by the Knox County Jail grievance procedure.

In this case, the Knox County Jail has a grievance procedure that requires that an inmate first file a Level 1 grievance. *DSMF ¶¶ 42-45.* If an inmate is not satisfied with the response to a Level 1 grievance, the inmate may file an Administrative Grievance (Level 2) which is generally answered by Lt. Gardner. *DSMF ¶¶ 4, 6.* If an inmate feels the grievance has not been addressed in compliance with standards at the Administrative Grievance level, the inmate may file an appeal, first to the Knox County Sheriff and subsequently to the State Jail Inspector for External Review. *DSMF ¶ 47.* Ruffin filed one grievance with the Knox County Sheriff dated December 6, 2016, but this grievance concerned being served pork and the use of regular commissary. *DSMF ¶ 51.* On January 31, 2017, Ruffin filed an external grievance with the Maine Department of Corrections concerning problems with the grievance procedure at the Knox County Jail. *DSMF ¶ 52.* Neither of these grievances detailed issues that are currently before the Court in this Complaint. Because Ruffin failed to exhaust all levels of the jail's grievance process related to any of the claims in this case, his claims are barred.

  C. <u>The Defendants are entitled to summary judgement on the allegation that they denied Ruffin access to religious items or that Ruffin was discriminated against in the provision of religious items.</u>

The Plaintiff alleges that he was not provided religious items, or that these items were provided after a delay, and that he was discriminated against because of the delay in receiving a Qur'an while Christian inmates were provided with Bibles. The facts demonstrate that the jail relies on donated religious items. *DSMF ¶ 20.* The Bibles that are available at the jail have been donated. *DSMF ¶ 21.* The jail did not have a Qur'an in its possession when Ruffin was first incarcerated. *DSMF ¶ 22.* Staff made inquiries to the Maine State Prison and the Cumberland County Jail to obtain copies of the Qur'an and then made a request for copies from the Islamic Society of North America. *DSMF ¶¶ 23, 24.* Because of the holidays the shipping was delayed, but in January the jail received twelve donated Qur'ans from the Islamic Society of North America and provided one to Ruffin on January 11, 2017. *DSMF ¶¶ 24-28.* Ruffin was also provided a Muslim Prayer Focus book, a brown kufi hat and prayer oil on that date. *DSMF ¶ 27.* Ruffin was provided his Saint Christopher medallion on January 20, 2017 only four days after his first written request for the medal. *DSMF ¶¶ 31-32.* The Defendants are entitled to summary judgment on all claims related to the alleged denial of religious items.

  1. The Defendants are entitled to summary judgment on Plaintiff's RLUIPA claim.

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

*42 U.S.C. § 2000cc-1(a).* "[A] RLUIPA plaintiff bears the burden of demonstrating that he or she

6

wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Lebaron v. Spencer*, 527 F. App'x 25, 28 (1st Cir. 2013)(citations and quotations omitted). "RLUIPA does not require a State to pay for an inmate's devotional accessories." *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005).

The claims against the Defendants in their individual capacities fail because RLUIPA does not authorize such suits. *See e.g., Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 329 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007). In addition, Defendants Heath IV and Palmer did not have any involvement in providing Ruffin with his religious items. *DSMF ¶¶ 60, 62*. The claims against the County fail because Ruffin's religious exercise was not subjected to a substantial burden that was imposed by the government.

This case is similar to *Bader v. Wrenn*, 675 F.3d 95 (1st Cir. 2012). In *Bader*, an inmate alleged that his constitutional rights were violated when he was transferred to a prison that did not have Jewish services and did not have access to a rabbi. The prison relied on volunteers to lead Jewish religious services and because of its remote location the prison's efforts to locate volunteers was mostly unsuccessful. The court stated that: "Bader's disadvantages in the Berlin prison depend importantly on proximate actions and decisions not attributable to the government" and did not support a RLUIPA claim. *Id*. at 99. *See also Glenn v. N.H. State Prison Family Connections Ctr.*, 2013 DNH 97 (holding that prison that relied on volunteers to provide religious services and lacked Muslim religious services because of the shortage of appropriate volunteers did not violate RLUIPA). In addition a delay in providing religious material to Ruffin does not support a RLUIPA claim. *See Woods v. Staton*, 2017 U.S. Dist. LEXIS 136045, at *21 (D. Or. June 2, 2017) (delay of providing copy of the Quran to an inmate was an "inconvenience" that did not support a

7

RLUIPA violation or a constitutional violation); *Holiday v. Giusto*, 2004 U.S. Dist. LEXIS 16348, at *17 (D. Or. Aug. 10, 2004) (stating that "the minor delays in processing Plaintiff['s] requests simply do not rise to the level of a substantial burden on their religious practice" and therefore do not support a RLUIPA claim.)

The County is entitled to summary judgment on the RLUIPA claim because the jail relies on volunteers to provide religious items to inmates. Therefore, any burden was not caused by Knox County, but the lack of volunteers and donations. Furthermore, Ruffin was not denied access to his religious items. There was only a delay between his request for these items and their procurement. This delay did not substantially burden Ruffin's ability to exercise his religion. For these reasons, the Defendants are entitled to summary judgment on Plaintiff's RLUIPA claims.

2. The Defendants are entitled to summary judgment on Plaintiff's Free Exercise claim.

"[T]he Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter*, 544 U.S. at 719. The Free Exercise Clause does not require "every religious sect or group within a prison -- however few in number -- must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). "RLUIPA provides greater protection to inmates' free-exercise rights than does the First Amendment." *Kuperman v. Wrenn*, 645 F.3d 69, 79 (1st Cir. 2011). Therefore these Defendants are entitled to summary judgment for the same reasons they are entitled to summary judgment on the RLUIPA claim. *See supra Section C(1)*(discussing RLUIPA claim).

        3.    The Defendants are entitled to summary judgment on Plaintiff's Establishment Clause claim.

"[T]he Establishment Clause, commands a separation of church and state." *Cutter,* 544 U.S. at 719. "[T]he government may . . . accommodate religious practices . . . without violating the Establishment Clause." *Id.* at 713 (2005)(citations and quotations omitted).

The facts in this case are similar to other cases where a jail has accepted donated religious books. In *Staples v. NH State Prison*, 2017 DNH 046, the prison library contained many religious books that had been donated, but none on Taoism, which the inmate practiced. This evidence did not support a claim for a violation of the Establishment Clause. *Id*. at 14. The policy of accepting donated books "suggests only permissible religious accommodation, not the establishment of religion." *Id*. Similarly, in *Ha'Min v. Montgomery Cty. Sheriff's*, 440 F. Supp. 2d 715, 716 (M.D. Tenn. 2006), the evidence showed that the jail library had copies of Bibles that had been donated, but there were no Qur'ans because none had been donated. This evidence did not demonstrate that the jail promoted one religion over another in violation of the Establishment Clause. *Id*. at 717. *See also, Glenn v. N.H. State Prison Family Connections Ctr.*, 2013 DNH 97 (Providing Christian chaplains did not demonstrate that the prison was preferring Christianity over Islam in violation of the Establishment Clause.)

As in *Staples* and *Ha'Min*, the Knox County Jail had Bibles available to inmates because the Bibles had previously been donated. The Knox County Jail did not have any Qur'ans at the time Ruffin was incarcerated because none had been donated. After Ruffin requested a Qur'an the jail worked diligently to have some Qur'ans donated. There is no evidence that the Jail was promoting one religion over another. In addition, Defendants Heath IV and Palmer did not have any involvement in providing Ruffin with his religious items. For this reason, the Defendants are entitled to summary judgment on this claim.

    4.  The Defendants are entitled to summary judgment on Plaintiff's Equal protection claim.

"The Equal Protection Clause requires that 'all persons similarly situated . . . be treated alike.'" *Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 10 (1st Cir. 2013)(citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To establish an equal protection violation, a plaintiff must introduce sufficient evidence from which a jury reasonably could conclude that, compared with others similarly situated, the plaintiff was treated differently because of an improper consideration, such as his religion." *Kuperman v. Wrenn*, 645 F.3d 69, 77-78 (1st Cir. 2011).

In this case, the jail relies on donations of religious materials and no Qur'ans had been donated at the time Ruffin was first incarcerated. In order to procure a Qur'an for Ruffin, the jail contacted the Islamic Society of North America and was able to get twelve copies donated, one of which was issued to Ruffin. There is no evidence Ruffin was treated differently because of his religion. In addition, Defendants Heath IV and Palmer did not have any involvement in providing Ruffin with his religious items. For this reason, the Defendants are entitled to summary judgment on this claim.

  D. <u>The Defendants are entitled to summary judgement on the allegation that they denied Ruffin minimum security housing in retaliation for Ruffin filing grievances.</u>

The Plaintiff alleges that he was not moved to minimum housing in retaliation for filing grievances about his health and religion. "[I]n order to survive summary judgment on a retaliation claim, a prisoner must make out a prima facie case by adducing facts sufficient to show that he engaged in a protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). "[T]he pertinent question in a § 1983 retaliation case based on the First Amendment is whether the

defendant's actions would deter a reasonably hardy individual from exercising his constitutional rights." *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011) (citations and quotations omitted). "The defendant may then avoid a finding of liability by showing that it would have reached the same decision . . . even in the absence of the protected conduct." *D.B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012)(citations and quotations omitted).

In this case, Ruffin was classified as a minimum security inmate the entire time he was incarcerated at the Knox County Jail. *DSMF ¶ 6.* The jail has sections that are identified as minimum or medium, as well as a section that previously housed maximum security inmates. *DSMF ¶ 10.* The jail only houses minimum and medium security inmates and inmates who are classified as minimum or medium are housed throughout the jail. *DSMF ¶ 9.* Often medium and minimum inmates are housed together in the same pod. *DSMF ¶ 12.* Where an inmate is housed depends on the inmate's classification, where there is room and an inmate's behavior. *DSMF ¶ 14.* Race, religion and grievance activity are not factors in this decision. *DSMF ¶ 14.* At the time Ruffin was housed, there were five minimum pods, two of which were occupied by females. *DSMF ¶¶ 10, 13.* Ruffin was initially housed in a medium cell and he remained in a medium cell throughout his incarceration at the jail. *DSMF ¶¶ 7,8.*

This evidence does not support the allegation that Ruffin was not moved to minimum in retaliation for his grievance activity. Ruffin was initially placed in a medium pod on November 22, 2016 after he had only been at the jail for five days. *DSMF ¶ 7.* This was before he filed any grievances. *DSMF ¶ 50.* By that time, he had only filed two inmate requests, one for a pin number and one for a visitor list. *DSMF ¶ 49.* These requests were unrelated to religious requests. Ruffin was involved in an incident on January 6, 2017, in which he refused an order by an officer. *DSMF ¶ 15.* Lt. Gardner denied Ruffin's request to move to minimum because of this incident. *DSMF*

*¶ 16.* In January, Ruffin also was found to have contacted the victim of his crime and law enforcement had to come to the jail to discuss this with him. *DSMF ¶ 17.* On April 4, 2017, Ruffin was asked if he wanted to move to minimum, but he declined. *DSMF ¶ 18.* By June, the entire minimum section of the jail, with the exception of the trustee pod, was closed down. *DSMF ¶ 19.* There is no evidence the jail took adverse action against Ruffin, he was just kept in a medium pod where he had been since he was first housed at the jail. Nor is there any evidence of a causal link between Ruffin's grievance activity and the decision not to move Ruffin to a minimum pod. In addition, neither Palmer nor Heath IV had any involvement in where Ruffin was housed. *DSMF ¶¶ 61, 63.* For this reason, the Defendants are entitled to summary judgment on this claim.

> E. The Defendants are entitled to summary judgment on the allegation that they transferred Ruffin to the Cumberland County Jail in violation of his First Amendment Rights.

The Plaintiff alleges that his transfer to the Cumberland County Jail violated his rights to practice his religion under the First Amendment. "[An inmate] can be transferred for no reason at all, *Montanye v. Haymes*, 427 U.S. 236, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976). However, he may nevertheless establish a claim under § 1983 if the decision to transfer him was made by reason of his exercise of constitutionally protected First Amendment freedoms." *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979). "[T]he discretion afforded prison administrators in transfer decisions is extremely broad." *Id*. "[A] prisoner, in making a circumstantial case that he was transferred for improper reasons, has a heavy burden. Even a lesser burden cannot be met by proof of circumstances equally consistent with several hypotheses. *Layne v. Vinzant*, 657 F.2d 468, 476 (1st Cir. 1981)(citations and quotations omitted). Maine law permits an inmate to be transferred from one correctional facility to another. *34-A M.R.S. § 3061*.

In *Bader*, an inmate was transferred from one prison in New Hampshire where he had access to regular Jewish religious activities to another prison in a much less populated part of the state where he had very limited access to Jewish religious activities due to a lack of volunteers. 675 F.3d at 96. The First Circuit determined although "Bader's transfer was legal under RLUIPA does not mean that it is wise or charitable to keep Bader indefinitely in Berlin, New Hampshire." *Id*. at 100. The Court further instructed that New Hampshire should consider moving Bader back to the prior prison where he had more access to Jewish services. *Id*.

In this case, Ruffin was transferred on June 8, 2017 to the Cumberland County Jail. *DSMF ¶ 2*. He had been incarcerated at the Knox County Jail for over six months. During Ruffin's incarceration at the Knox County Jail he was provided with religious items he requested. *See supra Sections III(C)* (discussing the constitutionality of Defendant officers' actions in providing religious items to Ruffin). Ruffin was at the Knox County Jail for almost two weeks of Ramadan and the jail made arrangements to provide him with meals before sunrise and after sunset. Ruffin was transferred to the Cumberland County Jail because the Cumberland County Jail has a larger population of inmates who identify as Muslim and is able to provide more religious services to Muslim inmates. *DSMF ¶ 3*. Transferring Ruffin so that he could have an increase in religious services is not discriminatory and did not violated Ruffin's First Amendment rights. This is exactly the action that was suggested by the First Circuit in *Bader*. In addition, Defendants Heath IV and Palmer did not have any involvement in providing transferring Ruffin to the Cumberland County Jail. *DSMF ¶ 59*. For these reasons, the Defendants are entitled to summary judgment on this claim.

    F.    <u>The Individual Defendants are Also Entitled to Qualified Immunity on Plaintiff's Claims.</u>

In addition, the Defendants are entitled to qualified immunity. Government officials who

are performing discretionary functions are entitled to qualified immunity if their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry is a two part test. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009). The first part of this inquiry considers whether the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second part of this inquiry is whether that right was clearly established. *Id*. "The second, 'clearly established,' step itself encompasses two questions: whether the contours of the right, in general, were sufficiently clear, and whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." *Ford v. Bender*, 768 F.3d 15, 23 (1st Cir. 2014). The qualified immunity standard is very broad and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v Bryant*, 502 U.S. 224, 229 (1991).

In this case, these Defendants are entitled to qualified immunity because there were no constitutional violations and the rights in question were not clearly established. The Defendants have previously discussed the lack of constitutional violations. *See supra Sections III (C), (D) and (E)*(discussing the constitutionality of Defendant officers' actions). Beyond this, the rights in question were not clearly established. It was not clearly established that not having a Qur'an at the jail at the time of Ruffin's incarceration would violate the constitution or that a delay of fifty-five days from November 17, 2016, the first date he was incarcerated at the jail, until January 11, 2017, when he was issued a Qur'an, was unconstitutional. It was not clearly established that housing Ruffin in medium security housing in a jail that only houses medium and minimum inmates often together in the same pods would violate constitutional protections. Nor was it clearly established that transferring Ruffin to the Cumberland County Jail where additional religious

services were provided to Muslims was unconstitutional. There is no pre-existing law that would have put the Defendants on notice that these actions would be unlawful and a reasonable defendant would not have understood he was violating Ruffin's rights. For this reason, the Court should grant the Defendants summary judgment on these claims.

    G.    <u>Knox County is entitled to summary judgment on Plaintiff's municipal liability claims.</u>

        1.    Defendant Knox County is entitled to summary judgment because there were no underlying constitutional violations.

Defendant Knox County is not liable because there were no underlying constitutional violations. Where the Defendant officers "ha[ve] inflicted no constitutional harm, neither the municipality nor the supervisor can be held liable." *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002). In this case, the Defendant officers did not violate Ruffin's constitutional rights. *See supra Sections III(C), (D) and (E)* (discussing the constitutionality of Defendant officers' actions). For this reason, summary judgment should be granted in favor of Defendant Knox County.

        2.    Defendant Knox County is further entitled to summary judgment because there is no evidence of any unconstitutional policies, customs or practices and the required causal connection is not present.

In order to establish governmental entity liability, the Plaintiff must either demonstrate that the unconstitutional actions of an employee were taken pursuant to an official policy which itself was unconstitutional, or that those actions resulted from a pattern or practice of widespread and pervasive unconstitutional conduct of which those with final decision-making authority knew or should have known, and yet done nothing to end the practice. S*ee generally Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 690-91 (1978); *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989). Another requirement in a Section 1983 case seeking to fasten liability on the governmental entity is that the policy, custom or practice or absence of policies must be the

services were provided to Muslims was unconstitutional. There is no pre-existing law that would have put the Defendants on notice that these actions would be unlawful and a reasonable defendant would not have understood he was violating Ruffin's rights. For this reason, the Court should grant the Defendants summary judgment on these claims.

G. <u>Knox County is entitled to summary judgment on Plaintiff's municipal liability claims.</u>

1. Defendant Knox County is entitled to summary judgment because there were no underlying constitutional violations.

Defendant Knox County is not liable because there were no underlying constitutional violations. Where the Defendant officers "ha[ve] inflicted no constitutional harm, neither the municipality nor the supervisor can be held liable." *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002). In this case, the Defendant officers did not violate Ruffin's constitutional rights. *See supra Sections III(C), (D) and (E)* (discussing the constitutionality of Defendant officers' actions). For this reason, summary judgment should be granted in favor of Defendant Knox County.

2. Defendant Knox County is further entitled to summary judgment because there is no evidence of any unconstitutional policies, customs or practices and the required causal connection is not present.

In order to establish governmental entity liability, the Plaintiff must either demonstrate that the unconstitutional actions of an employee were taken pursuant to an official policy which itself was unconstitutional, or that those actions resulted from a pattern or practice of widespread and pervasive unconstitutional conduct of which those with final decision-making authority knew or should have known, and yet done nothing to end the practice. S*ee generally Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 690-91 (1978); *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989). Another requirement in a Section 1983 case seeking to fasten liability on the governmental entity is that the policy, custom or practice or absence of policies must be the

"moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Bordanaro*, 871 F.2d at 1156. "This connection needs to rise above a mere but/for coupling between cause and effect." *Id*. at 1162.

In this case, there is no evidence that there were any unconstitutional policies, customs or practices at Knox County relating to an inmate's right to exercise their religion or unconstitutionally prefer one religion over another. *See DSMF ¶¶ 37-41*. The Sheriff and Jail Administrator are not aware of any incidents when corrections officers at Knox County have unlawfully interfered with any inmate or detainee's right to practice his or her religion or have unlawfully denied an inmate access to religious items. *DSMF ¶¶ 66, 67*. Nor are they aware of any complaints, claims or allegations of this occurring, other than by Ruffin. *DSMF ¶ 68*. Finally, there is no evidence that any policy at Knox County caused an interference with Plaintiff's right to practice his religion. For these reasons, the County is entitled to summary judgment on Plaintiff's municipal liability claims.

IV.   CONCLUSION

For all of the foregoing reasons, the Defendants ask the Court to enter summary judgment in their favor pursuant to Fed.R.Civ.P. 56.

Dated:  April 12, 2018
       /s/  Peter T. Marchesi
       Peter T. Marchesi, Esq.

       /s/  Cassandra S. Shaffer
       Cassandra S. Shaffer, Esq.

Wheeler & Arey, P.A.
Attorneys for Defendants
27 Temple Street
Waterville, ME  04901

UNITED STATES DISTRICT COURT
District of Maine

| | |
|---|---|
| DANIEL RUFFIN,<br>    Plaintiff<br><br>v.<br><br>WARREN HEATH IV, DENNIS PALMER,<br>JOHN HINKLEY, CYNTHIA GARDNER,<br>and TIMOTHY MCFARLAND,<br>    Defendants | Docket No. 2:17-cv-00151-NT |

CERTIFICATE OF SERVICE

  I, Peter T. Marchesi, hereby certify that:

- Defendants' Motion for Summary Judgment

has been served this day on Plaintiff by filing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

  None

  Copies of the above documents have been provided to the Plaintiff via United States Mail, postage prepaid, at the following address:

  Daniel Ruffin
  Maine State Prison
  807 Cushing Road
  Warren, ME  04864-4600

Dated:  April 12, 2018        /s/  Peter T. Marchesi
                Peter T. Marchesi, Esq.
                Wheeler & Arey, P.A.
                Attorneys for Defendants
                27 Temple Street
                Waterville, ME  04901