UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL ONEIL RUFFIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:17-cv-00151-NT |
| | ) | |
| JOHN HINKLEY, et al., | ) | |
| | ) | |
| Defendants | ) | |

# RECOMMENDED DECISION ON
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this action, Plaintiff Daniel Ruffin alleges Defendants[1] discriminated against him based on his religion and grievance activity while he was an inmate at the Knox County Jail. The matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 30.)

Through their motion, Defendants contend summary judgment is appropriate because Plaintiff failed to exhaust the available administrative remedies before initiating this action, and because the record will not support a finding that Defendants violated Plaintiff's clearly established constitutional rights. Plaintiff did not file a response to the motion.[2]

---

[1] Defendant John Hinkley has been the Jail Administrator at the Knox County Jail since September 2004. (DSMF ¶ 53.) Defendant Cynthia Gardner is a Lieutenant in Jail Programs and Services. (*Id.* ¶ 55.) Defendant Timothy McFarland is the Assistant Programs Officer at the Knox County Jail. (*Id.* ¶ 56.) Defendant Warren Heath IV has worked at the Knox County Jail since 2009 and was a Sergeant at the time Plaintiff was incarcerated. (*Id.* ¶ 57.) Defendant Dennis Palmer has worked at the Knox County Jail since 2013 and was a Corrections Officer at the time Plaintiff was incarcerated. (*Id.* ¶ 58.)

[2] Local Rule 7(a) provides in relevant part: "Unless within 21 days after the filing of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection." However, a court "may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within

Following a review of the record, I recommend the Court grant Defendants' motion.

**SUMMARY JUDGMENT FACTS**[3]

Plaintiff was incarcerated at the Knox County Jail beginning on November 17, 2016. (Defendants' Statement of Material Facts (DSMF) ¶ 1.) Plaintiff remained incarcerated at the Knox County Jail until he was transferred to the Cumberland County Jail on June 8, 2017. (*Id.* ¶ 2.) While this action was pending, Defendant Hinkley transferred Plaintiff from the Knox County Jail to the Cumberland County Jail because, Defendant Hinkley asserts, the Cumberland County Jail has more inmates who identify as Muslim and

---

a certain number of days." *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7 – 8 (1st Cir. 2002). Instead, a court must assess whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the context of summary judgment, this Court has observed that under certain circumstances, a prisoner's nonconforming summary judgment submission should be reviewed by the Court and that the facts set forth in a verified complaint or prisoner affidavit should be considered. *Clarke v. Blais*, 473 F. Supp. 2d 124, 128 (D. Me. 2007). In this case, I have considered the summary judgment record filed by Defendants and Plaintiff's sworn statements of record.

[3] In support of their motion for summary judgment, Defendants filed a statement of material facts, which statement was supported by citations to record evidence, in accordance with Local Rule 56. Local Rule 56 requires that factual assertions in support of or in opposition to a motion for summary judgment be set forth in a separate statement of material facts. D. Me. Loc. R. 56(a), (b), (f). Plaintiff did not file an opposing statement as required under Local Rule 56(c). Because Plaintiff has not filed an opposing statement or legal memorandum, and because Defendants' statements are supported by record citations, the factual assertions set forth in Defendants' statement are deemed admitted. *See* D. Me. Loc. R. 56(f). A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules. *Ruiz Rivera v. Riley*, 209 F.3d 24, 27 – 28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007). Nevertheless, there are situations when it is appropriate for the Court to consider the sworn statements of a pro se litigant even if the litigant did not strictly comply with the procedural rules. *See Clarke v. Blais*, 473 F. Supp. 2d 124, 128 – 30 (D. Me. 2007) ("The First Circuit has not addressed this notice debate directly, but has said, in the summary judgment context, that unrepresented plaintiffs' opposing affidavits and opposition papers are to be read 'liberally.'" (citing *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988), and *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980)); *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182 – 83 (D. Me. 2007). As explained above (n.2), in assessing the motion for summary judgment, I have considered the Local Rule 56 record and Plaintiff's sworn statements of record.

provides more religious services for Muslim inmates. (*Id.* ¶ 3; Affidavit of John Hinkley ¶ 3, ECF No. 31-5.) [4]

### *Plaintiff's Incarceration at the Knox County Jail*

Throughout his detention at the Knox County Jail, Plaintiff was classified as minimum security. (DSNF ¶ 6.) Following an initial period in "booking," on November 22, 2016, Plaintiff was moved to a cell in a medium security pod. (*Id.* ¶ 7.) Plaintiff remained in a medium security pod the entire time he was incarcerated at the Knox County Jail. (*Id.* ¶ 8.)

With the exception of the occasional maximum security inmate who is held temporarily pending transfer to another facility, the Knox County Jail only has minimum and medium security inmates. (*Id.* ¶ 9.) While there are separate minimum and medium security pods, minimum and medium security inmates are often assigned to the same pods at the Knox County Jail. (*Id.* ¶¶ 11 – 12.) An inmate's cell assignment depends on the inmate's classification, space availability in the jail, and the inmate's conduct. Race, religion, and grievance activity are not factors that are considered in housing decisions within the Knox County Jail. (*Id.* ¶ 14.) Knox County Jail Policy & Procedure No. D-100, entitled "Inmate Classification and Security," is an official policy and procedure of the Knox County Jail and was in effect while Plaintiff was incarcerated at the Knox County Jail. (*Id.* ¶ 41; Policy D-100, ECF No. 31-12.)

---

[4] Plaintiff was transferred from the Cumberland County Jail to the Maine State Prison on June 20, 2017, after he was sentenced, and he currently is incarcerated at that facility. (DSMF ¶¶ 4 – 5.) Plaintiff asserted in a verified supplement to his pleadings that Defendant Hinkley transferred him out of the Knox County Jail because he refused to let Muslim inmates stay in Knox County Jail and practice their religion. (Supplemental Pleading at 3, ECF No. 13.)

In his verified complaint, Plaintiff asserts he is African American, and that while he was in a medium security pod, three white inmates were moved from the pod into a minimum security pod ahead of him. (Complaint at 6, ECF No. 1.) On January 6, 2017, Plaintiff was locked down for approximately two hours after he became upset during recreation and refused to walk to his cell. (DSMF ¶ 15.) On January 10, 2017, Defendant Gardner, a lieutenant at the Knox County Jail, denied Plaintiff's request to move to minimum security because of his conduct. (*Id.* ¶ 16.) In January 2017, Plaintiff was also found to have contacted the victim of his crime by phone. The contact would make it unlikely Plaintiff would be moved to a minimum-security section. (*Id.* ¶ 17.)

On April 4, 2017, Plaintiff was asked if he wanted to move to the minimum section. Plaintiff declined and said that he was comfortable in his medium cell. (*Id.* ¶ 18.) In June 2017, four minimum security pods were closed because of a lack of staffing, and some inmates were sent to other jails. The only minimum pod that remained open was for inmates with trustee status. (*Id.* ¶ 19.)

*Accommodation of Religion*

Knox County Jail administrators do not purchase religious books or items for inmates. (*Id.* ¶ 20.) When Plaintiff was first incarcerated at the Knox County Jail, the jail did not have a Qur'an. (*Id.* ¶ 22.) Although Knox County Jail has Bibles available for inmates, the Bibles were donated to the Jail by volunteers. (*Id.* ¶ 21.) After Plaintiff requested a Qur'an, Defendant McFarland contacted the Maine State Prison and Cumberland County Jail to inquire how to obtain a Qur'an. He learned that the Islamic

4

Society of North America provides Qur'ans to jails.[5] (*Id.* ¶ 23.) A Knox County Jail staff member or administrator requested several Qur'ans from the Islamic Society of North America. (*Id.* ¶ 24.) The Qur'ans arrived in January 2017, and on January 11, 2017, Defendant Gardner issued Plaintiff a Muslim Prayer Focus book, a Qur'an, a brown kufi hat, and prayer oil. (*Id.* ¶¶ 25 – 28.) Plaintiff completed an inmate request for a St. Christopher medallion, on January 16, 2017, and that Defendant Gardner provided Plaintiff the St. Christopher's medallion on January 20, 2017.[6] (*Id.* ¶¶ 31 – 32.)

Before the start of Ramadan observation in 2017, the jail made arrangements with the kitchen to have the evening meal served at approximately 8:00 p.m., and the morning meal at approximately 4:00 a.m. (*Id.* ¶ 33.) During Ramadan, Plaintiff was provided meals in accordance with this directive. (*Id.* ¶ 35.)

Knox County Jail Policy & Procedure, No. 15.200, entitled "Religious Services," is an official policy and procedure of the Knox County Jail and was in effect when Plaintiff was incarcerated there. (*Id.* ¶ 37; Policy 15.200, ECF No. 31-11.)

*Exhaustion of Administrative Remedies*

Knox County Jail Policy & Procedure, No. 11.300, entitled "Inmate Grievances," is an official policy and procedure of the Knox County Jail and was in effect when Plaintiff was incarcerated at the Knox County Jail. (DSMF ¶ 42; Policy 11.300, ECF No. 31-13.) The grievance policy provides that "a grievance may be initiated by an inmate for an

---

[5] According to the allegations in the verified complaint, Plaintiff could have ordered a Qur'an from the Keefe Commissary Network, but would have had to purchase the Qur'an. (Complaint at 6, ECF No. 1.)

[6] Plaintiff alleged that white inmates received their medallions "on a daily basis." (Amended Complaint at 3, ¶ 9.)

5

alleged violation of civil, constitutional, or statutory rights; an alleged criminal or prohibited act by a staff member; or to resolve a condition existing within the Jail that creates unsafe or unsanitary living conditions; or to resolve a chronic condition existing within the Jail that contradicts the Maine State Jail Standards." (DSMF ¶ 44.)

The first step in the grievance procedure is for an inmate to file a Level 1 grievance, which is answered by a supervisor. (*Id.* ¶ 45.) If an inmate is not satisfied with the response to a Level 1 grievance, the inmate may file an Administrative Grievance (Level 2), which is generally answered by Defendant Gardner, but is occasionally answered by Defendant Hinkley. (*Id.* ¶ 46.) If an inmate believes the grievance has not been addressed in compliance with standards at the Administrative Grievance level, the inmate may file an appeal, first to the Knox County Sheriff and subsequently to the State Jail Inspector for External Review. (*Id.* ¶ 47.) The appeal is the final step in the Knox County Jail grievance procedure. (*Id.* ¶ 48.)

Plaintiff filed some grievances while he was detained at the Knox County Jail.[7] Plaintiff did not file a grievance in which he raised complaints related to the availability of a Qur'an or any acts of alleged retaliation or discrimination regarding housing. (*Id.* ¶¶ 50 – 52.)

---

[7] Plaintiff filed a grievance and an appeal concerning the diet at the jail, and he filed a grievance regarding the grievance process. (DSMF ¶¶ 50 – 52.)

## DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy,* 782 F.3d 73, 77 (1st Cir. 2015). If the court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied to the extent there are supported claims. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Summary judgment is appropriate where a claim is unsupported. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## B. Failure to Exhaust

Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit pursuant to 42 U.S.C. § 1983. Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.").

The Supreme Court has held that § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90 – 91. "Compliance with prison grievance procedures … is all that is required … to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

A defendant may raise the § 1997e exhaustion requirement as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) ("The Supreme Court made it plain … that exhaustion under § 1997e(a) is not a jurisdictional condition, and has held it to be an affirmative defense." (citing *Jones*, 549 U.S. at 212)). Because failure to exhaust administrative remedies is an

affirmative defense rather than a jurisdictional issue, initially, the defendant bears the burden of proof. *Jones*, 549 U.S. at 216. To satisfy that burden, the defendant must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir.) (en banc), *cert. denied sub nom. Scott v. Albino*, 135 S. Ct. 403 (2014). Thereafter, the plaintiff must present evidence that demonstrates "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Defendants have established that an administrative remedy (i.e., a formal grievance process) was available to Plaintiff on his claims that Defendants unreasonably burdened his practice of his religion[8] and discriminated against him based on his race, religion, or engagement in activity protected under the First Amendment. Defendants thus have satisfied their initial burden. Plaintiff, therefore, must demonstrate that the administrative remedy was unavailable to him, or, at a minimum, that a factual issue remains in dispute as to the availability of an administrative remedy.

Plaintiff has not challenged Defendants' argument, and the record does not otherwise reflect a material fact in dispute regarding Plaintiff's failure to exhaust the

---

[8] The exhaustion requirement applies to any claim Plaintiff's claim might have asserted under the Religious Land Use and Institutional Persons Act (RLUIPA) as well as his claims under 42 U.S.C. § 1983 for deprivation of rights protected by the Equal Protection Clause and First Amendment. 42 U.S.C. §§ 1997e(a) (PLRA) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."), 2000cc–2(e) (RLUIPA) ("Nothing in this Act shall be construed to amend or repeal the Prison Litigation Reform Act of 1995 ..."); *Cutter v. Wilkinson*, 544 U.S. 709, 723 n.12 (2005).

9

available administrative remedy. Because the uncontroverted record evidence establishes that an administrative remedy was available to Plaintiff and that Plaintiff did not exhaust the remedy, Defendants are entitled to summary judgment on Plaintiff's claims based on racial or religious discrimination, and to the extent Plaintiff asserts Defendants unreasonably restricted his religious practice.

**C. Defendant Hinkley's Decision to Transfer Plaintiff from the Knox County Jail**

In addition to his claims that Defendants violated his rights while Plaintiff was detained at the Knox County Jail, Plaintiff alleges that Defendant Hinkley violated Plaintiff's rights by transferring Plaintiff to the Cumberland County Jail, allegedly to avoid having to accommodate Plaintiff's religious practice at the Knox County Jail. The claim is also barred due to Plaintiff's failure to exhaust the available administrative remedy discussed above.

Even if Plaintiff's failure to exhaust does not bar his claim, Plaintiff is nevertheless precluded from proceeding on his claim. First, given that Plaintiff has not asserted facts that would support a conclusion that the transfer to Cumberland County was unfavorable to him, Plaintiff arguably has not alleged an actual controversy. Because Plaintiff has not asserted an injury-in-fact, the claim is moot. *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006) ("When … a plaintiff has initial standing to bring a particular claim, a federal court is duty bound to dismiss the claim as moot if subsequent events unfold in a

manner that undermines any one of the three pillars on which constitutional standing rests: injury in fact, causation, and redressability.")[9]

In addition, Plaintiff has produced no evidence to support his contention that Defendant Hinkley transferred him in an effort to restrict his religious practices. The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA or Act), provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a). RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). "[A] RLUIPA plaintiff bears the burden of demonstrating that he or she wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *LeBaron v. Spencer*, 527 F. App'x 25, 28 (1st Cir. 2013) (quotation marks omitted).

---

[9] Plaintiff's claim under RLUIPA, in particular, would appear to be mooted by the transfer absent a factual scenario that requires Plaintiff's return to the Knox County jail. RLUIPA provides Plaintiff with a claim "against a government," but does not authorize an "individual capacity" claim against the individual defendants. 42 U.S.C. § 2000cc–1(a). Although the statutory definition of "government" includes "any ... person acting under color of State law," the Act does not authorize individual capacity liability as under section 1983. *Stewart v. Beach*, 701 F.3d 1322, 1334 – 35 (10th Cir. 2012) (citing additional circuit court authority and explaining that RLUIPA was enacted pursuant to Spending Clause authority, and therefore does not run against individual government employees except in their official capacities). Furthermore, even against an institutional defendant, RLUIPA does not authorize a claim for money damages. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *Reese v. Bouffard*, No. 1:14-cv-00244-GZS, 2015 WL 1947192, at *7, 2015 U.S. Dist. LEXIS 10093, at *16 (D. Me. Jan. 28, 2015) (recommended decision), *aff'd* (Apr. 29, 2015).

In *Bader v. Wrenn*, 675 F.3d 95 (1st Cir. 2012), the First Circuit considered "whether RLUIPA constrains prison transfers based on disadvantages at the transferee prison that are not themselves of the government's creation." *Id.* at 98. In *Bader*, the prisoner plaintiff was transferred from a facility in Concord, New Hampshire, which had an active group of participants in Jewish religious activities, including volunteers from outside the facility, to a facility in Berlin, New Hampshire, at which no such services were available. *Id.* at 96 – 97. The plaintiff brought suit and requested an order that required the Commissioner of the New Hampshire Department of Corrections to return him to Concord. *Id.* at 97. The District Court denied injunctive relief, because the transfer had not prevented the plaintiff from receiving or participating in religious practice and the difficulties experienced by the plaintiff were due to the fact that volunteers were unavailable in Berlin. *Id.* at 97 – 98. Noting that the focus of RLUIPA is on burdensome "internal prison rules and procedures limiting religious practice," the First Circuit affirmed the District Court, but also noted that the case would be different if the record demonstrated the transfer was made "for the purpose of restricting … religious opportunities or in retaliation for the exercise of … First Amendment rights."[10] *Id.* at 99.

In this case, the record establishes that not only was the transfer not made for the purpose of restricting Plaintiff's ability to practice his religion, but the transfer was designed to enhance his ability to practice insofar as the Cumberland County Jail had more

---

[10] While the Court denied relief, it also stated that the State of New Hampshire ought to consider returning the plaintiff to Concord given the plaintiff's "sincerity about his plight." *Id.* at 100.

inmates who identify as Muslim and provided more religious services for Muslim inmates. Plaintiff's RIULPA claim is thus not supported by the factual record.[11]

Plaintiff's First Amendment retaliation claim is also barred by the qualified immunity doctrine. As noted in *Bader*, a transfer could be actionable as retaliatory where the transfer is designed to punish a Plaintiff for engaging in activities protected by the First Amendment. 675 F.3d at 99. A retaliation claim requires (1) that the inmate engaged in conduct that is protected by the First Amendment; (2) that a defendant took adverse action against the inmate because of the prisoner's protected conduct; and (3) that the adverse action would deter an inmate of ordinary firmness from exercising his or her First Amendment rights. *Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 94 (D. Me. 2013).

Government officials are entitled to qualified immunity against claims for money damages unless they violate a constitutional right that was "clearly established" when they engaged in the conduct at issue. *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "This strain of immunity aspires to 'balance [the] desire to

---

[11] In the event Plaintiff's Equal Protection claim is not barred by his failure to exhaust the claim administratively, Plaintiff's claim also is unsupported by the record. "To establish an equal protection violation, a plaintiff must introduce sufficient evidence from which a jury reasonably could conclude that, compared with others similarly situated, the plaintiff was treated differently because of an improper consideration, such as his religion." *Kuperman v. Wrenn*, 645 F.3d 69, 77-78 (1st Cir. 2011). Given that uncontroverted record establishes that Defendants provided Plaintiff with various religious items to allow him to practice his religion, and given that Defendants facilitated Plaintiff's ability to practice his religion through his transfer, Plaintiff cannot demonstrate an Equal Protection violation. Likewise, the record is devoid of any evidence that Plaintiff was treated differently because of his race.

compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive.'" *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004) (quoting *Buenrostro v. Collazo*, 973 F.2d 39, 42 (1st Cir. 1992)). Defendant Hinkley's assertion of qualified immunity requires the Court to assess: (1) "whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation" and (2) "whether the violated right was clearly established at the time that the offending conduct occurred." *Ford v. Bender*, 768 F.3d 15, 23 (1st Cir. 2014). When the Court considers whether the constitutional right was clearly established at the time, the Court must determine (a) "whether the contours of the right, in general, were sufficiently clear," and (b) "whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." *Id.*

The summary judgment record establishes that Defendant Hinkley transferred Plaintiff to the Cumberland County Jail because the Cumberland County Jail could better accommodate Plaintiff's religious practice. The record lacks any facts that would support a finding that the transfer to the Cumberland County Jail imposed a burden on his exercise of religion, that he was denied a different security classification because of his exercise of religion, or that transfer to facilitate the practice of religion was the kind of action that would deter an inmate of ordinary firmness from exercising his First Amendment rights. The record, therefore, does not "make out a constitutional violation," nor would it support a finding that Defendants' violated a "clearly established" constitutional right even if the

record evidence could be viewed to make out a violation. *Ford v. Bender*, 768 F.3d at 23. Accordingly, Defendant Hinkley is entitled to qualified immunity on Plaintiff's First Amendment claim.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' Motion for Summary Judgment.[12]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 21st day of June, 2018.

---

[12] In their motion for summary judgment, Defendants request summary judgment on behalf of Knox County. The caption in this case does not reflect a pending claim against Knox County. However, if such a claim can be inferred from Plaintiff's pleadings, the County would be entitled to summary judgment given Plaintiff's failure to demonstrate a violation of his rights, and given Plaintiff failure to demonstrate that any of the acts of which he complained were the product of a municipal custom, policy, or practice. *Kennedy v. Town of Billerica*, 617 F.3d 520, 531 – 32 (1st Cir. 2010); *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002).